RUSSELL *et al. v.* ALLERTON.

*(Supreme Court, General Term, First Department. May 5, 1890.)*

TRIAL—INSTRUCTIONS.

Plaintiffs agreed to ship cattle for defendant, on a vessel to be ready on or before April 1st, the right being reserved to plaintiffs to load grain "between decks." It was necessary that the grain should be shipped first, and, it not being ready, an agreement was made to extend the time to April 7th. In an action for breach of the contract, evidence was given that the vessel was not ready for the cattle on April 7th, during which day defendant refused to ship them, and, to avoid the effect of this condition of affairs, plaintiffs gave evidence tending to show that the time for shipment was extended to the 9th, and then to the 11th, a charter to ship grain between April 5th and April 10th having been entered into. The evidence respecting these extensions was conflicting, and there was evidence to show that the vessel was not ready on the 11th. At defendant's request the court charged that if the jury found that on the morning of the 7th defendant said he would ship if the vessel could be ready on the 9th, at midnight, and in fact the ship could not have been ready by that time, he had a right, on the 7th, to refuse to ship at any time in the day. Defendant also requested a charge that, if plaintiffs were not and could not be ready to receive the cattle at the time finally agreed upon, the verdict should be for defendant, but the court replied: "I cannot charge that, because it may have been the 9th." *Held*, that the refusal to charge was erroneous, as the request was not included in the former request, and, under the evidence, the jury might have concluded that the time finally agreed on was not April 9th, but the 11th.

On reargument. For former report, see 8 N. Y. Supp. 688.

Action by Charles F. Russell and Samuel Russell against Samuel W. Allerton to recover damages for breach of a contract of shipment. From a judgment entered on a verdict for plaintiffs, and an order denying a motion for a new trial, defendant appealed. The judgment was reversed, and a new trial ordered. 8 N. Y. Supp. 688. Afterwards a motion for a reargument was granted. 9 N. Y. Supp. 941.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Ira D. Warren,* for appellant. *James L. Bishop,* for respondents.

DANIELS, J. A reconsideration of these appeals was directed, for the reason that the third request to charge had been overlooked in the decision which had previously been made, and the case has been further examined to ascertain whether the omission to notice that request will justify any

change in the direction which has already been made for the disposition of
the appeals. By the charter which was made between the plaintiffs and the
defendant for the shipment of the cattle on board the Bertha, she was to be
ready to receive them at the port of Philadelphia not later than the 1st of
April, 1879. She was not at that time ready to receive the cattle, and evi-
dence was given to prove that she was not ready to receive the cattle on
board on the 7th of April, during which day the defendant finally refused to
lade them on board the steamer; and it was to avoid the effect of this condi-
tion of the steamer that evidence was given on behalf of the plaintiffs by
Mr. Mather, who was their agent, to prove that the time for the lading of
the cattle on board the steamer was extended by an agreement made be-
tween himself and the defendant, and it is necessary to consider the effect
of the testimony of this witness for the purpose of determining whether the
refusal to charge the latter request was obviated by the charge given as to a
similar proposition when that was first presented to the court. He testified
that, early in the day of the 7th of April, an interview took place concerning
the loading of the cattle upon the steamer, and that it was agreed, as the re-
sult, that if the steamer should be ready to receive the cattle on the night
of Wednesday, which was the 9th of April, they would be shipped by the
defendant. But this, according to the evidence of the witness, was not the
only day to which an extension of the time for shipment was contemplated
and arranged, for he further testified that a shipment on the 11th of April
was also within a conversation which took place either on the 7th of April
or on the Friday or Saturday previous to that date. He was examined quite
at large as to this latter extension for the time of shipment of the cattle, and
the inquiry was made of him whether it was "on the 7th of April that they
said they would ship, if the vessel was ready on the 11th, at midnight," and
his answer was: "To the best of my remembrance, it is. It might have
been the Friday or Saturday previous, but I can't say positively." Upon
his previous redirect examination he was asked: "When you had the con-
versation with Mr. Allerton or Mr. Sherman, on the 7th of April, in which
they said they would ship the cattle provided the vessel was ready by the
11th of April, at midnight, had you, at that time, stated to them the sub-
stance of the charter-party marked 'Defendant's Exhibit No. 4,' and 'Plain-
tiffs' Exhibit No. 24?'" And he answered: "To the best of my knowledge
and belief, I had. I won't say I did." And further: "How did it happen,
on the 7th of April, that anything should have been said about the vessel
being ready on the 11th, at midnight? *Answer.* It would be likely to occur
from the condition of this charter. *Q.* Wasn't that fact alluded to as a rea-
son of the loading of the vessel on the 11th? *A.* To the best of my knowl-
edge, it was. My belief is that it was." He was also asked upon his re-
cross-examination whether, "on the 7th of April, when you talked that
matter over with them, wasn't there some doubts as to whether the ship
would be ready on the 11th to receive the cattle? *A.* I don't remem-
ber. There might have been. *Q.* You were talking about that? Did you
show them the charter-party? *A.* I presume so. I don't say I showed them
that charter-party. I am only telling you the general conversation in which
I have reason to believe that all the facts were brought open to them. *Q.*
When they left your office, did they go to inquire about whether it could be
ready on the 11th? *A.* That is my belief." The evidence did, therefore, au-
thorize the position to be taken on behalf of the plaintiffs that the time for
the shipment of the cattle had been finally extended to the night of the 11th
of April, and that this arose out of the condition of a charter which had
been made with Peter Wright & Sons for the lading of grain in the lower part of
the steamer. This charter was made on the 4th of April, after a previous
charter for the carriage of grain had been canceled, on the ground that the
grain included in that charter was to be taken to Avon Mouth dock, where

the cattle could not be unladen, as the defendant was entitled to have that done, under the charter made with him. This witness testified further that the grain was to be loaded within five days after the 5th, from the 5th to the 10th, and also answered that the charter for the grain extended the time for lading it on the steamer until the 10th of April. And, as the cattle could not all be placed upon the steamer before the lading of the grain was completed, there was an obvious propriety, if that could be done, for extending the time for the lading of the cattle to the 11th of that month, and that would be the final period which, under the evidence of this witness, the plaintiffs might be at liberty to insist upon their right to a performance of the contract on the part of the defendant. The testimony of this witness is further to the effect that the defendant and the person acting for him, or one of them, proposed to ascertain by inquiry how long it would take to get the grain on board, so as to be ready for the cattle, and that, if it would be done by Wednesday, which was the 9th, the cattle would be shipped; and his answer was, "I think that is the substance of what they told me." The question was then put to him: "On the 7th of April, when you talked that over with them, wasn't there some doubts as to whether the ship would be ready on the 11th to receive the cattle? *Answer.* I don't remember. There might have been." The further question was afterwards asked: "When they left your office, didn't they go to inquire about whether it could be ready on the 11th? *A.* That is the best of my belief." The defendant, upon the same subject, testified that he did go to the office of Peter Wright, and asked them if they thought the grain would be ready, and the person to whom the inquiry was addressed said he did not think it would be ready before the 15th. They were uncertain when it would be ready. They said it was on the cars, and could not tell when it would arrive. The plaintiffs' witness Mr. Mather was also asked: "Didn't Mr. Sherman or Mr. Allerton, when you met them on the street, say that they ascertained that the rest of the cargo could not be gotten on the ship by the 11th, and they would not ship? *Answer.* He might have told me so, but I don't remember."

He was also asked whether, on the 7th of April, he knew "of anything to prevent the entire completion of the loading of the grain by the 11th." He answered: "I did not." This evidence very clearly discloses the understanding at the trial to have been that it tended to prove the fact that the defendant consented to an extension of the time to the 9th of April, and also to the 11th of the same month, in case the steamer would, at either date, be ready to receive the cattle; and it also tended to prove the further fact that the steamer would not be in readiness for that object by the night of the 11th. And, after making the inquiries which seem to have been made at the office of Peter Wright & Sons, the witness met the defendant and Mr. Sherman, who was acting with him, after they had been to the office of Wright & Sons, and he was asked the question: "When he and Mr. Sherman met you on the street on the 7th of April, in the afternoon, didn't they tell you they had ascertained the fact that you would keep the vessel four or five days longer, and didn't they refuse to ship on the ground that the cattle wouldn't be fit to ship? *Answer.* I think they did." And the fact was further proved that the steamer was not ready to receive the cattle either on the night of the 9th or the day of the 11th of April, although evidence was given tending to prove that she might have been ready within two days after the 7th, which was the shortest possible time to put the grain on board; and it was as to this state of the evidence, and the inquiries which the jury could make under it, that the requests were made for the directions now under consideration. The court had charged the jury that if the ship was not ready on the 7th of April, and there was no extension of the time, then the defendant was entitled to a verdict. But if at that time the defendant had agreed to put the cattle on board if the ship was ready at midnight of the 9th, then the plaintiffs were entitled to main-

tain the action. The case was therefore left in a condition in which further directions as to the effect and time of the extension was important for the guidance of the jury, and the court was accordingly requested to charge: "*Third.* If the jury find that, on the morning of the 7th of April, the defendant said he would ship if the vessel could be ready Wednesday at midnight, and in fact the ship could not have been ready on Wednesday at midnight, he had a right, on the 7th, to refuse the ship at any time in the day. *The Court.* I so charge." And this is the request which has not already been considered in the disposition of the case. The court complied with the request made in this manner, but it will be seen from its language that it applied exclusively and wholly to the agreement to ship if the vessel could not be ready on Wednesday at midnight, and, if she could not, that then he had a right on the 7th to refuse to make the shipment. The other request, which has already been considered, was broader than the charge in this manner given to the jury. It was in this language: "*Eighteenth.* If the jury find that the plaintiffs were not, and could not be, ready to receive the cattle at the time finally agreed on, the verdict should be for the defendant. *The Court.* No; I cannot charge that, because it may have been on the 9th." For it included, not only the evidence tending to establish an extension of the time of shipment to Wednesday at midnight, but also the time finally agreed upon. And, if the witness Mather was right in his evidence that there was an extension also of the time of shipment to the 11th of April, that was likewise included within the language of this request, for that would be the time finally agreed upon; and if the plaintiffs were not, and could not be, ready to receive the cattle at that time, then the defendant was entitled to have the jury directed to find a verdict in his favor. These two requests essentially differ in this respect: The one extends the time no further than midnight of the 9th of April, and the other to the time finally agreed upon, which might be, under the evidence, the 11th of April; and the defendant was entitled, in this state of the evidence, to have this direction given to the jury. That they were understood at the trial to be different in their effect, as they certainly are in their language, is evident from the circumstance that the court charged the first proposition, but distinctly refused to charge the other; and from that refusal the jury could very well understand that it was not necessary that the steamer should be ready to receive the cattle on the 11th, if she was not on the 9th, if the 11th was the time finally agreed on, to entitle the plaintiffs to maintain the action. And that the court considered the propositions to be different is evinced by what was said in answer to the last request, and that was that it could not be charged, because the time finally agreed upon might have been the 9th. But that did not justify the learned judge presiding at the trial to refuse to give this direction; for, with equal probability, the jury might have concluded that the time finally agreed upon was not the 9th, but that it was the 11th. The disposition which was accordingly made of the third request to charge in no respect legally answers the exception which was taken to the refusal to charge this eighteenth request.

Neither can the position be approved that the question put to the witness Mather, as to whether he had reason to believe that the offer to ship cattle on board the Bertha on the 7th of April, by Wright & Sons, was made on behalf of the defendant. The question itself was allowed to be answered in such a form as to receive statements which had been made consisting only of what the law denominated hearsay, and therefore improper. This related to a material part of the case concerning the subject of damages; for this witness had previously stated that, if he had gone into the market immediately after the defendant's refusal to ship the cattle on the afternoon of the 7th of April, and had taken what was immediately offered, he could have closed at the same rates. He was then asked whether they did not refuse one of a higher rate than was accepted; and his answer was: "Possibly we did." The question

was then put to him: "Didn't you refuse one for Peter Wright & Sons, on the afternoon of April the 7th, for four pounds a head? *Answer.* I can't remember what the rate was. We refused offers from them at that time because we didn't think we were warranted in accepting the rates." And it was to avoid the effect of this testimony, which included a larger rate of compensation than was finally received by the steamer for cattle laden on board and carried by it, that the inquiry was made as to the belief of the witness relative to the origin of the offer. That belief was not admissible. It could not regularly be received as evidence to affect the defendant's liability in the action. Both the question itself and the answer obtained were equally erroneous. Upon neither ground can any change be justly made in the direction already given for the disposition of these appeals; but the judgment and order should be reversed, and a new trial directed, with costs to the defendant to abide the event. All concur.